IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES GREEN, DZ-7962,    )
    Petitioner,    )
        )
    v.    )  2:10-cv-168
        )
BRIAN COLEMAN, et al.,    )
    Respondents.    )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of James Green for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

James Green, an inmate at State Correctional Institution Fayette has presented a petition for a writ of habeas corpus. Green was originally convicted and sentenced by the Court of Common Pleas of Allegheny County, Pennsylvania, to a three and a half to twelve year period of incarceration at No. CC 199311844 and CC 199312577.[1]  At that time his minimum sentence expiration was January 31, 2002 and his maximum sentence was set for expire on July 31, 2010.[2] On January 31, 2002 he was released on parole and in June 2002 was returned to custody as a

---

[1] See: Petition at ¶ 5.

[2] See: Exhibits A and B to the petition.

1

technical parole violator and ordered to serve twelve months backtime.[3] He was reparoled on November 15, 2004.[4] On October 24, 2005, Green was again charged as a technical parole violator based on new criminal charges and on November 21, 2005, the Pennsylvania Board of Probation and Parole ("the Board") directed that the petitioner be recommitted as a technical parole violator "when available to serve 18 months backtime."[5]  On January 31, 2007, petitioner was convicted of the new criminal changes committed while on parole and following a hearing, the Board ordered him to serve twenty-four months as a convicted parole violator concurrent to the eighteen months previously imposed.[6]  Thus, his new maximum sentence was recalculated as January 4, 2011.[7]

Petitioner filed an administrative appeal and the Board vacated the twenty-four month violation but retained the eighteen month technical violation over the petitioner's argument that he did not receive notice of the technical violation until September 27, 2007, although the decision was rendered on November 21, 2005.[8]  The petitioner now alleges that the extension of

---

[3] See: Petition at ¶ 5.

[4] Id.

[5] See: Petition at ¶ 6 and Exhibit C to the petition.

[6] See: Petition at ¶¶ 8-9.

[7] See: Exhibits A and B to the petition. It would appear that on Exhibit A, page 2 the petitioner's new maximum sentence date at CC 930012577 is incorrectly stated as January 4, 2006, but rather should read January 4, 2011 since as written the petitioner's maximum sentence would have been about four years and not the twelve years imposed. We note that his maximum recalculated sentence at CC 930011844 is correctly reported on Exhibit A as January 4, 2006. Thus, the mistaken entry on the first sentence appears to be nothing more than a clerical error and not a change in sentence.

[8] See: Paragraph 11 of the petition and Exhibit C to the petition.

his maximum release date from July 31, 2010 to January 4, 2011, or an additional 157 days twice extended his maximum sentence by that additional number of days being attached to his two original sentences.[9]

Petitioner then unsuccessfully filed an administrative appeal and a petition for a writ of mandamus in the Commonwealth Court challenging this calculation.[10]  As a result, the petitioner contends he has been compelled "to serve a sentence beyond maximum imposed by the sentencing court at sentence indictment CC 199312577..."[11]

Because the chronology of events concerning the petitioner's encounters with the penal system are so complex, we will recite them from the respondent's brief (Document No.10) as supported by the record:

> 1. On October 18, 1972, petitioner was sentenced to 6 years incarceration after being convicted of burglary. See Exhibit 1.
>
> 2. On November 12, 1974, petitioner was released on parole from the October 18, 1972 sentence. See Exhibit 2.
>
> 3. On July 22, 1975, petitioner was sentenced to a term of 3 to 6 years incarceration after being convicted of three counts of robbery. See Exhibit 3.
>
> 4. On November 17, 1975, petitioner was recommitted as a convicted parole violator on the October 18, 1972 sentence. See Exhibit 4.
>
> 5. On June 21, 1976, petitioner was released on parole from the October 18, 1972 sentence to being serving the July 22, 1975 sentence. See Exhibit 5.
>
> 6. On May 20, 1980, petitioner was sentenced to 1 to 2 years incarceration after being convicted of burglary. See Exhibit 6.

---

[9] See: Petition at ¶¶ 13 and 14.

[10] See: Petition at ¶¶ 16 and 17.

[11] See: Petition at ¶ 17.

7. On July 30, 1980, petitioner was sentenced to 8 to 20 years incarceration after being convicted of 4 counts of robbery. See Exhibit 7.

8. On September 2, 1982, petitioner was sentenced to 3 months to 1 year incarceration after being convicted of possession of drugs. See Exhibit 6.

9. On November 12, 1987, petitioner was released on parole from [both] the July 30, 1980, 8 to 20 year sentence [and the May 20, 1980 one to two year sentence]. See Exhibit 8

10. On July 27, 1988, petitioner was sentenced to 2 to 4 years incarceration after being convicted of burglary and possessing an instrument of crime.  See Exhibit 9.

11. On August 19, 1988, petitioner was recommitted [when available to serve 24 months] as a convicted parole violator on the July 30, 1980, 8 to 20 year sentence. See Exhibit 10.

12. On September 22, 1988, petitioner was granted reparole to a detainer sentence and his parole violation maximum date on the July 30, 1980, 8 to 20 year sentence was established at July 27, 2000.  See Exhibit 11.

13. On July 27, 1990, petitioner was released on parole from the July 30, 1980, 8 to 20 year sentence to being serving the July 27, 1988, 2 to 4 year sentence. See Exhibit 12

14. On January 11, 1992, petitioner was released on parole from the July 27, 1988, 2 to 4 year sentence, with a maximum sentence of January 11, 1994.  See Exhibit 13.

15. As of January 11, 1992, petitioner was also on parole from the 8 to 20 year sentence, with a maximum date of July 27, 2000.  See Exhibit 13.

16. On September 10, 1992, petitioner was recommitted as a technical parole violator for violating conditions of his parole. See Exhibit 14.

17. On January 20, 1993, petitioner was sentenced to 1 year probation after being convicted of theft and related offenses.  See Exhibit 15.

18. On April 24, 1993, petitioner was recommitted as a convicted parole violator on the July 30, 1980, 8 to 20 year sentence and his parole violation maximum date on that sentence was established at July 6, 2002.  See Exhibit 16.

19. On June 10, 1993, petitioner was released on parole from the July 30, 1980, 8

to 20 year sentence to a Board detainer on the July 27, 1988, 2 to 4 year sentence. See Exhibit 17.

20. Also on June 10, 1993, petitioner was released on parole from the July 27, 1988, 2 to 4 year sentence, with a parole violation maximum date of June 10, 1995 on that sentence.  See Exhibit 18.

21. On May 5, 1994, petitioner was sentenced to 42 to 84 months incarceration after being convicted of escape.  See Exhibit 19.

22. On May 6, 1994, petitioner was sentenced to 1 to 7 years incarceration after being convicted of Criminal Trespass.   See Exhibit 20.

23.  Also on May 6, 1994, petitioner [was] sentenced to 2 years, 6 months to 5 years incarceration after being convicted of possessing instrument of crime.  See Exhibit 20.

24. On September 19, 1994, petitioner was recommitted as a convicted parole violator on the July 30, 1980, 8 to 20 year sentence [with a maximum sentence expiration date of October 10, 2003].  See Exhibit 21.

25. Petitioner was not recommitted on the July 27, 1988, 2 to 4 year sentence which subsequently expired on June 10, 1995.  See Exhibit 21.

26. On August 4, 1999, petitioner was released on parole from the July 30, 1980, 8 to 20 year sentence to being serving the sentences that were imposed on May 5, 1994 and May 6, 1994.  See Exhibit 22.

27.  On February 11, 2002, petitioner was released on parole from the sentences that were imposed on May 5, 1994 and May 6, 1994, with a maximum sentence date of July 31, 2010.  See Exhibit 23.

28. On August 9, 2002, petitioner was recommitted as a technical parole violator on the May 5, 1994 and May 6, 1994 sentences for violating conditions of his parole [with a maximum sentence expiration date of July 31, 2010].  See Exhibit 24.

29.  On November 15, 2004, petitioner was released on parole from the sentences that were imposed on May 5, 1994 and May 6, 1994, with a maximum sentence date of July 31, 2010.  See Exhibit 25.

30.  On May 19, 2005, petitioner was arrested by the City of Pittsburgh Police Department and charged with possession of cocaine and resisting arrest.  See

Exhibit 26.

31.  On May 21, 2005, petitioner was accidentally released from the Allegheny County Jail and remained at large for 157 days, until he was arrested by the City of Pittsburgh Police Department on October 24, 2005, and charged with burglary and drug charges.  See Exhibit 26.

32.  On November 21, 2005, petitioner was recommitted as a technical parole violator on the May 5, 1994 and May 6, 1994 sentences for violating conditions of parole.  See Exhibit 27.

33. [Despite the notice contained in Exhibit 27], Petitioner did not file a timely administrative appeal of the decision that recommitted him as a technical parole violator, pursuant to the Board's regulations at 37 Pa. Code § 73.1.

34.  On January 29, 2007, petitioner was sentenced to 21 to 42 months incarceration after being convicted of burglary.  See Exhibit 28.

35. On September 25, 2007, petitioner was recommitted as a convicted parole violator, with a parole violation maximum date of February 18, 2013.  See Exhibit 29.

36. Petitioner filed an administrative appeal of the decision that recommitted him as a convicted parole violator.

37.  On January 16, 2008, petitioner's administrative appeal was granted, the [September 25, 2007] decision to recommit petitioner as a convicted parole violator was rescinded and petitioner's parole maximum date on the May 5, 1994 and May 6, 1994 sentences was established as January 4, 2011.  See Exhibit 30.

38. Petitioner did not file a timely petition for administrative review of the January 4, 2011 parole violation maximum date, pursuant to the Board's regulation at 37 Pa. Code § 73.1 [and as noticed on July 16, 2008. Exhibit 30].
39. Rather petitioner began to write to the Board in June of 2008 claiming that the January 4, 2011 parole violation maximum date was incorrect.  See Exhibit 31.

40.  By decision mailed August 5, 2008, petitioner's challenges to the January 4, 2011 parole violation maximum date were dismissed as untimely.  See Exhibit 31.

41.  The August 5, 2008 response did, however, explain that petitioner's parole violation maximum date was extended by 157 days to reflect the time he was

6

delinquent from May 21, 2005 until October 25, 2005.  See Exhibit 31.[12]

42. On May 15, 2008, petitioner was refused parole. [with a sentence maximum of January 4, 2011].

43. On June 19, 2009, petitioner was refused parole. [with a sentence maximum of January 4, 2011].  See Exhibit 33.

44. Petitioner is scheduled for reparole review in or after May of 2010.  See Exhibit 33.

Green now comes before this Court and argues that he is entitled to relief on the following grounds:

1. The Board on November 21, 2005 deemed the petitioner to be a technical parole violator and directed that he serve 18 months backtime at CC 199311844 and extended this sentence maximum to January 4, 2006 by adding the 157 days of delinquent time and that he served this additional time.

2. The Board has a mandatory duty to comply with the due process and procedural due process of the U.S. Constitution, also 14, 8, and 10 [amendments].  In this case [the Board] has repeat[ed]ly failed to send proper notice of this orders to recommit, ABPP-39 to petitioner or then appointed counsel ...

3. That although originally sentenced prior to the 1996 Parole Act Amendments, he was recommitted under the latter amendments which increased from two to

---

[12] Exhibit 31 contains a succinct summary of the events:

> [T]he Board decision recorded November 21, 2005... recommitted you as a technical parole violator. When you were released on parole from your original sentence on November 15, 2004, your maximum sentence date was July 31, 2010. You were declared delinquent on May 21, 2005. The Board lodged its warrant to commit and detain you on October 25, 2005. With the above fact in mind, you owe the Board 157 days for the period you were delinquent; specifically, from May 21, 2005 to October 25, 2005. Adding 157 days (or 5 months, 4 days) to your maximum sentence date at the time you were paroled (07/31/10), yields a new maximum sentence date of January 4, 2011. Therefore, your parole violation maximum sentence date is correct and your petition for administrative review is **DISMISSED AS UNTIMELY**.

7

three [the number of] votes necessary for release on parole.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court

of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

The relevant Pennsylvania statute, 61 P.S. §331.21 does not create a mandatory expectation of release on parole but rather has been determined to be a matter of grace. Rogers v. Pennsylvania Board of Probation and Parole, 555 Pa. 285 (1999). In the absence of a state mandated right of parole, parole is a matter of mere possibility and does not invoke a federally protected liberty interest. Kentucky Department of Corrections v. Thompson, 490 U.S. 455 (1989). In Connecticut v. Dumschat, 452 U.S. 458 (1981), the Court recognized that where there is no liberty interest created, there is no constitutional basis for relief. Since federal habeas

9

corpus relief is premised on violations of constitutional proportion, no such factors exist here unless the petitioner can demonstrate that the denial of parole was based on "race, religion, political beliefs, or ... frivolous criteria with no rational relationship to the purpose of parole such as the color of one's eyes, the school one attended, or the style of one's clothing." Block v. Potter, 631 F.2d 233, 235 (3d Cir.1980).

In the instant case, the record discloses that Green filed an appeal in the Commonwealth Court at 604 MD 2007 alleging that he never received the November 21, 2005 decision of the Board and as such should have his appeal rights restored.[13] Although the Commonwealth Court granted judgment on the pleadings is favor of the Commonwealth, on November 18, 2009 the Pennsylvania Supreme Court vacated that determination and remanded the matter to the Commonwealth Court for further proceedings.[14] Petitioner then filed an amended pleading and on April 16, 2010, the Commonwealth Court directed the Board to respond.[15]

In addition to a series of correspondence with the Commonwealth Court, Green also submitted a series of formal filings in that Court. On February 27, 2009, his petition for review was docketed at No. 319 CD 2009 and on July 8, 2009, another petition was filed at No. 366 MD 2009.[16] On March 3, 2009 the earlier petition was quashed as untimely,[17] and on October 1, 2009 the Commonwealth Court sustained the Board's demurrer on the grounds that the grant or

---

[13] See: Exhibits 34 and 35 to the answer of the Commonwealth.

[14] See: Exhibit 36 to the answer.

[15] See: Exhibits 37 and 38 to the answer.

[16] See: Exhibits 39 and 41 to the answer.

[17] See: Exhibit 40 to the answer.

denial of parole is a matter of its discretion.[18]  Additionally, on July 9, 2009, Green filed a petition in the Commonwealth Court at 362 MD 2009 challenging the computation of his parole maximum date.[19]  That petition was dismissed on July 15, 2009.[20]  On July 29, 2009, petitioner filed another petition in the Commonwealth Court at 1520 CD 2009 challenging the Board's denial of parole, and on August 6, 2009, that petition was dismissed .[21]

Because of the pendency of proceedings in the Commonwealth Court on petitioner's claim that he did not receive a copy of the November 21, 2005 decision of the Board, which is his second issue here, his state rights on this claim clearly have not been exhausted.  Thus, the instant petition contains at least one claim that has not been exhausted and as such the entire petition is subject to dismissal. Rose v. Lundy, 455 U.S. 509 (1982).

Nevertheless, the convoluted procedural history of this case engendered by the petitioner's continuous reentry into the criminal justice system due to his continuous release on parole, committing crimes while on such release and then again reentering the system, speaks in favor of disposing of his allegations at this time rather than having the Court repeatedly subjected to his barrage of pleadings as he has done with the courts of the Commonwealth and before the Board.

The first issue which he raises here concerns the action of the Board on November 21, 2005 deeming him a technical violator and extending his maximum sentence by the 157 days of

---

[18] See: Exhibit 42 to the answer.

[19] See: Exhibit 43 to the answer.

[20] Id.

[21] See: Exhibit 44 to the answer.

11

delinquent time following his accidental release from custody. He failed to file a timely administrative appeal from this decision.

    It is provided in 28 U.S.C. § 2244(d)(1) and (d)(2) that:

(1) A 1-year period of limitation shall apply to the application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

    The instant petition was executed on January 27, 2010 and for this reason, the allegation is clearly time barred here.

    The petitioner's second contention is that the Board failed to provide him with notice of this order, and for this reason violated due process. While we recognize that this matter is presently the subject of a proceeding in the Commonwealth Court, while neither crediting nor rejecting the veracity of the allegations raised in that Court, it is readily apparent from the record that on many occasions after that date the petitioner received notices from the Board which would have incorporated the determination made on November 21, 2005, and that he failed to raise this matter as a Constitutional issue. In addition, in a letter to the petitioner mailed on

August 5, 2008, he was specifically reminded of the Board's November 21, 2005 decision.[22] Thus, even giving credence to the petitioner's allegations that he was never advised of that decision, it is clear that on September 27, 2007 and August 5, 2008, he was placed on notice of it[23]. Thus, this issue likewise is time barred here.[24]

The final issue which the petitioner raises here is that although originally sentenced on some of his convictions prior to the 1996 Parole Act Amendments, his parole has been governed by the terms of those Amendments and thus as applied to him violated the ex post facto clause. As previously observed, except if applied in an arbitrary manner, parole is a matter of grace rather than a mandatory expectation and as such does not create a federally protected liberty interest. Kentucky Department of Corrections v. Thompson, supra. For this reason, the claim does not provide a basis for relief.

While we note that the petition here is subject to dismissal on a variety of grounds including failure to exhaust state court remedies, time bars and meritlessness, we also note that these bars may be excused where there is a demonstration that a failure to address the issues will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446 (2000). Such a basis arises where failure to act might result in the conviction of an individual who is actually innocent. Murray v. Carrier, 477 U.S. 478 (1986). No such showing is made here. Rather the record clearly demonstrates that the petitioner has repeatedly flaunted the system, abused privileges that were granted to him, and now seeks to complain about acts for which he bears full

---

[22] See: Exhibit 31 to the answer.

[23] See: Petition at ¶11 and Exhibit C, asa well asa Exhibit 31 to the answer.

[24] We address these first two issues on purely federal statutory grounds in no way implicating the viability of the matter presently pending before the Commonwealth Court of Pennsylvania

responsibility.

On either procedural grounds or on the merits, we conclude that the petition of James Green should be dismissed. In addition, because reasonable jurists could not concluded that a basis for appeal exists, it is also recommended that a certificate of appealability be denied.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have fourteen days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                            Respectfully submitted,

                            s/Robert C. Mitchell,

Entered: April 28, 2010.                United States Magistrate Judge